**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

CODY DUFRANE,

Plaintiff,

v.

Case No.:

MILWAUKEE COUNTY, SHERIFF DENITA BALL, DEIRDRA ADAMS, MELISHIA MORGAN, JOHN DOE OFFICERS 1-5, JOHN DOE SUPERVISORS 1-5 and ABC INSURANCE COMPANY,

Defendants.

# COMPLAINT

**NOW COMES** Plaintiff, Cody DuFrane, by and through his attorneys, CADE LAW GROUP LLC, and files this complaint against the Defendants, and alleges and shows to the Court as follows:

1. This is a civil rights action arises from Defendants' failure to protect Plaintiff Cody DuFrane, a pretrial detainee and inmate worker housed at the Milwaukee County Jail, from a known and obvious rick of violent assault. Plaintiff was assigned cleaning duties in the jail's Mental Health Unit under the supervision and protection of Milwaukee County Correctional staff. Despite possessing actual knowledge that inmate Donte Patterson was housed at the Mental Health Unit because of serious mental illness, had a documented history of violent and assaultive behavior, and had physically assaulted correctional staff only days earlier, Defendants removed one of Patterson's restraints and permitted Plaintiff to work within arm's reach of him. Defendants failed to take even the most basic precautions to protect Plaintiff from a substantial and foreseeable risk of

serious harm. As a direct and proximate result of Defendant's objectively unreasonable conduct, Patterson brutally attacked Plaintiff with his fists and the exposed metal ratchet of a handcuff, causing Plaintiff to suffer severe and permanent injuries, including head lacerations, facial fractures, and lasting physical and emotional harm. This action seeks redress pursuant to 42 U.S.C. § 1983 and Wisconsin law for Defendant's violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and for their negligence in failing to protect him from a danger they knew, or unquestionably should have known, existed.

2. All of the Defendants are sued in their individual and official capacities. At all relevant and material times, these Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors, or employees of Milwaukee County; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. § 12131(1); and were objectively unreasonable to the constitutional, civil, and statutory rights of Plaintiff.

**JURISDICTION**

3. The Eastern District of Wisconsin has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(1), (3), and (4), as this complaint alleges violations of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

4. Jurisdiction of this Court also is invoked pursuant to 28 U.S.C. § 1367. This Court has supplemental jurisdiction over any other claims Plaintiff may make because they form part of the same case or controversy.

## VENUE

5. Venue in the Eastern District of Wisconsin is proper under 28 U.S.C. § 1391(b)(2), as the events giving rise to this complaint occurred in the Eastern District of Wisconsin. In addition, Defendants are located in the Eastern District of Wisconsin.

## PARTIES

6. Plaintiff Cody DuFrane ("Plaintiff") is an adult residing in the Eastern District of Wisconsin. At all times material hereto, Plaintiff was a pretrial detainee lawfully confined at the Milwaukee County Jail ("Jail") who was assigned as an inmate worker responsible for performing cleaning and maintenance duties throughout the facility, including in the Jail's Mental Health Unit ("MHU").

7. Defendant Milwaukee County is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin. At all times material hereto, Milwaukee County owned, operated, managed, controlled, staffed, supervised, and maintained the Jail and was responsible for establishing, implementing, enforcing, and overseeing the customs, policies, practices, procedures, training, supervision, discipline, staffing, and operation of the Jail and its correctional staff. Milwaukee County is a "person" subject to suit under 42 U.S.C. § 1983. Defendant County has a business address of 901 N. 9th Street, Milwaukee, WI 53233.

8. Defendant Denita Ball, at all times relevant to this Complaint, was the duly appointed Sheriff of Milwaukee County and the final policymaker responsible for the operation, administration, supervision, staffing, training, and safety of the Jail, its detainees and prisoners, and its correctional personnel. Defendant Ball has a business address of 821 W. State Street, Milwaukee, WI 53233.

9. Defendant Deirdra Adams, Badge #82, ("Officer Adams") was, at all times relevant, employed by the Milwaukee County Sheriff's Office as a correctional officer assigned to the MHU. Officer Adams acted under color of state law and within the scope of her employment at all relevant times. Defendant Adams has a business address of 821 W. State Street, Milwaukee, WI 53233.

10. Defendant Melishia Morgan, Badge #404, ("Officer Morgan") was, at all times relevant, employed by the Milwaukee County Sheriff's Office as a correctional officer assigned to the MHU. Officer Morgan acted under color of state law and within the scope of her employment at all relevant times. Defendant Morgan has a business address of 821 W. State Street, Milwaukee, WI 53233.

11. Defendants John Doe Officers 1-5 are correctional officers employed by the Milwaukee County Sheriff's Office whose identities are presently unknown, but who participated in, authorized, approved, directed, acquiesced in, or failed to prevent the constitutional violations alleged herein. Plaintiff will amend this Complaint and substitute their true identities upon discovery. These defendants, upon information and belief, have a business address of 821 W. State Street, Milwaukee, WI 53233.

12. Defendant John Doe Supervisors 1-5 are supervisory officials, classification officers, policy makers, or administrators employed by Milwaukee County or the Milwaukee County Sheriff's Office who identities are presently unknown but who were responsible for inmate classification, restraint procedures, staffing, training, supervision, policy implementation, or operational decisions that caused or contributed to the constitutional violations alleged herein. Plaintiff will amend this Complaint and substitute

their true identities upon discovery. These defendants, upon information and belief, have a business address of 821 W. State Street, Milwaukee, WI 53233

13. Defendant ABC Insurance Company ("ABC"), upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, proper to and including all relevant times herein, ABC issued a policy of liability insurance to Milwaukee County and all its employees and/or agents thereof. By the terms of said policy, ABC agreed to pay any and all sums for which Milwaukee County and/or its agents and employees might be held legally liable for injuries or damages caused by Milwaukee County and/or its employees and agents. Upon information and belief, said insurance policy was in full force and effect during all times period relevant herein. Pursuant to Wis. Stat. § 803.04, ABC Insurance Company is a proper party to this action.

14. A combined Notice of Injury and Notice of Claim, pursuant to Wis. Stat. § 893.80, was submitted to Milwaukee County on or about March 16, 2026 via U.S. Postal Service, certified mail, return receipt requested. A true and correct copy of the Notice of Claim is attached hereto and incorporated herein as **Exhibit 1**, and evidence of the sending of the notice is here:







15. Milwaukee County did not reject or provide a response to the Notice of Claim within 120 days, pursuant to Wis. Stat. § 893.80.

**STATEMENT OF FACTS**

16. At all times relevant to this Complaint, Plaintiff was a pretrial detainee lawfully confined at Jail.

17. During his confinement, Plaintiff was assigned as an inmate worker responsible for performing cleaning and maintenance duties throughout various areas of the Jail, including the MHU. Plaintiff performed these duties at the direction of Milwaukee County correctional staff and under their supervision and control, and had no authority to refuse work assignments or determine where his duties would be performed.

18. On March 15, 2025, Officers Adams and Morgan were assigned to supervise the Jail's MHU, which housed inmates suffering from serious mental illness and/or significant behavioral and disciplinary issues, including inmates requiring heightened security precautions because of their violent and assaultive behavior.

19. Inmate Donte Patterson ("Patterson"), an inmate housed in the MHU at all relevant times due to serious mental health concerns and a documented history of violent and assaultive behavior, was one of the inmates Officers Adams and Morgan were in charge of supervising.

20. Prior to March 15, 2025, Defendants knew Patterson posed an extraordinary danger to correctional staff and other inmates because he had repeatedly engaged in violent and assaultive conduct. Specifically:

a. On February 14, 2025, Patterson faked an injury and spat in the face of a correctional officer.

b. On February 16, 2025, Patterson projected vomit toward another inmate and struck him in the face and neck.

c. On February 17, 2025, Patterson spit on another correctional officer as he was rounding. Later that day, Patterson ***broke free from his handcuffs*** and escaped from the restraint bench, spat on a different correctional officer, attempted to destroy jail equipment, threatened to assault officers in the future, and required an emergency response by correctional staff.

d. On March 2, 2025, Patterson projected vomit at a correctional officer and verbally threatened him. Patterson then freed himself from the MHU restraint bench, attempted to wiggle out of the RIPP belt, and broke off a piece of metal from the MHU bench and ate it. Patterson was held at taser point until additional officers responded and was later transported for medical attention.

e. On March 3, 2025, after returning from the hospital, Patterson physically assaulted a Sergeant Dantzler in the head with a closed fist. Patterson continued to be combative and threaten staff as they regained control of him. He also spat in staff's faces.

f. On March 12, 2025, Patterson violently assaulted correctional officers after being partially released from his restraints to go the bathroom. Patterson headbutted a correctional officer, struck the officer with a restraint belt, ignored repeated commands, and forced correctional staff to twice deploy a taser on him before he could be restrained.

21. Patterson was being held at the Jail because he was a high risk detainee, who also was being prosecuted on multiple federal counts, including two recent armed carjackings, and also was being held on at least six felony counts with an extensive criminal record in Illinois:

**Milwaukee County Case Number 2024CF004053 State of Wisconsin vs. Donte V Patterson**

**Case summary**

| | | | |
|---|---|---|---|
| **Filing date**<br>08-26-2024 | **Case type**<br>Criminal | **Case status**<br>Closed - Electronic filing | |
| **Defendant date of birth**<br>11-25-1992 | **Address**<br>8742 South Harper Avenue #B, Chicago, IL 60619 | **Branch ID**<br>30 | **DA case number**<br>2024ML021225 |

**Charges**

| | | | |
|---|---|---|---|
| **Responsible official**<br>Richards-30, Jonathan | **Prosecuting agency**<br>District Attorney | **Prosecuting agency attorney**<br>Staskunas, Michael R | Printable v |

**Defendant owes the court:** $0.00

| Count no. | Statute | Description | Severity | Disposition |
|---|---|---|---|---|
| 1 | 943.32(2) | Armed Robbery | Felony C | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(c) | Habitual Criminality Repeater | | |
| 2 | 940.31(1)(a) | Kidnapping/Carry w/o Consent | Felony C | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(c) | Habitual Criminality Repeater | | |
| 3 | 943.231(1) | Carjacking: Possess Weapon | Felony B | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(c) | Habitual Criminality Repeater | | |
| 4 | 943.32(2) | Armed Robbery | Felony C | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(c) | Habitual Criminality Repeater | | |
| 5 | 943.32(2) | Armed Robbery | Felony C | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(c) | Habitual Criminality Repeater | | |
| 6 | 941.29(1m)(b) | Possess Firearm-Convicted of Out-of-State Felony | Felony G | Dismissed on Prosecutor's Motion |
| Modifier: | 939.62(1)(b) | Habitual Criminality Repeater | | |

Justice.gov > U.S. Attorneys > Eastern District of Wisconsin > Press Releases >
Chicago Man Sentenced To 19 Years' Imprisonment For Two Armed Carjackings and An Armed Robbery

PRESS RELEASE

## Chicago Man Sentenced to 19 Years' Imprisonment for Two Armed Carjackings and an Armed Robbery

Thursday, January 22, 2026

Share >

**For Immediate Release**

U.S. Attorney's Office, Eastern District of Wisconsin

Brad D. Schimel, United States Attorney for the Eastern District of Wisconsin, announced that on January 21, 2026, Donte Patterson (age 33) was sentenced to 19 years in federal prison for his role in armed carjackings in Chicago and Milwaukee and an armed robbery in West Milwaukee.

According to court records, Patterson committed an armed carjacking in Chicago on August 20, 2025, and then traveled to Milwaukee where, on the following day, Patterson committed a second armed carjacking and then an armed robbery in West Milwaukee. During each of the carjackings and the armed robbery, Patterson brandished a firearm.

At his sentencing hearing, Chief District Judge Pamela Pepper focused on the serious nature of the offenses, noting that Patterson's crimes imposed "psychological torture" on his victims. Chief Judge Pepper also noted the need to protect the public.

"Donte Patterson is an extremely dangerous offender who has spent nearly all of his adult life in prison and committed this violent crime spree only 6 months after release from his prior prison sentence," said U.S. Attorney Schimel. "There is clearly only one way for society to be safe from Patterson: lock him up. Thanks to the hard work of the law enforcement and prosecution team, our communities will get a much-needed break from his violent behavior."

"One of the FBI's top priorities is crushing violent crime. The significant sentence for Donte Patterson reflects the seriousness of his criminal offenses and his status as a repeat offender," said FBI Milwaukee Special Agent in Charge Alan Karr. "The FBI is committed to working with our law enforcement partners to identify criminals who prey upon our communities and bring them to justice."

The matter was investigated by FBI's Milwaukee Area Violent Crime Task Force, including the Milwaukee Police Department, as well as the West Milwaukee Police Department, and the Chicago Police Department. It was prosecuted by Assistant United States Attorney Julie F. Stewart.

22. Based on the above incidents and the charges for which Patterson was being held, Defendants knew, or reasonably should have known, that Patterson was an immediate and substantial danger to anyone placed near or within his reach. In fact, Patterson was in the MHU because of "his consistent behavior of physical assaults on staff.":

**Milwaukee County Sheriff's Office** — **Continuation**

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 25-046816 | 949 N 9th St, Milwaukee, WI, 53233 | 03/15/2025 |

Access to the MHU is gained by entering a doorway in the 2nd floor hallway.

On the day of the incident Patterson was assigned to Cell SNB 1 located in Sub Pod B and classified as Discipline status based on his consistent behavior of physical assaults on staff. On the day of the incident Patterson was secured to a wooden restraint bench adjacent to Sub Pod B and across from the CO work desk.

| Reporting Officer(s): | Payroll Number: | Pages: |
|---|---|---|
| Kohl, Gary | GAKGK | 2 Of 12 |

23. Despite this knowledge, on the evening of March 15, 2025, Patterson ***purportedly was secured*** to a wooden restraint bench in front of the correctional officers' workstation in the MHU.

24. At approximately 8:53 p.m., Patterson was provided a meal for Ramadan.

25. At Patterson's request, Officer Morgan removed Patterson's right hand from its restraint so that Patterson could eat with his dominant hand.

26. After removing Patterson's restraint, Officer Morgan permitted Patterson to remain with one hand free while she conducted other duties within the MHU.

27. According to her own admission in post-incident reports, it appears as if Officer Morgan failed to properly secure Patterson to the wooden bench:

| **Milwaukee County Sheriff's Office** | | | **Supplemental Report** |
|---|---|---|---|
| Incident Report Number: 25-046816 | Incident Location: 949 N 9th St, Milwaukee, WI, 53233 | | Incident Date: 03/15/2025 |
| New Incident: | Original Offense - 1: 940.20(1) | New Offense - 1: | New Offense - 2: |

**NARRATIVE**

On Saturday, March 15 2025, I, Correctional Officer (CO) Melishia morgan Badge# 404, was assigned to work in full duty uniform on 2nd shift (1400-2200 hours) for the Milwaukee County Sheriff's Office (MCSO) at the Criminal Justice Facility (CJF), located at 949 N. 9th Street, in the City and County of Milwaukee, State of Wisconsin, when the following incident occurred: I was originally assigned to release. I received a phone call from Lieutenant Payne letting me know that at 1800 hours I would be reassigned to work in the Mental Health Unit (MHU) with CO Adams.

At approximately1810 hours I CO Morgan arrived at the MHU where I was debriefed by an officer. I was told that I had two suicide watches, which were Occupant Anderson, and also Simmions. I then began cleaned up my area wiping down the phone and the computer, I seen that there was a taser sitting under the desk I grabbed the taser and put it on my belt. After my area was cleaned, I did a round in the unit.

At approximately 1900 hours an officer came in MHU and dropped off his Ramadan tray. I co Morgan opened the container and asked the other Officer was he getting everything in his tray due to hm being on suicide watch, the office responded yes just give him a suicide spoon. I than got the spoon out of the cabinet walked over to the bench where he was cuffed. He asked me to uncuff his right hand because that is the hand he eats with. I took the cuff off and set his tray down. Then I conducted a round.

| Reporting Officer(s): Morgan, Officer Melishia | | Payroll Number: MMAMM | Report Date: 03/17/2025 |
|---|---|---|---|
| Reviewed by: Payne, Lieutenant Jacquis | Payroll Number: JPXJP | Copy To: | Page: 1 Of 2 |



28. At approximately 7:25 p.m., Officer Adams left the MHU to retrieve inmate workers assigned to clean the unit, including Plaintiff.

29. Officer Adams escorted Plaintiff into the MHU to perform his cleaning duties despite knowing Patterson remained seated on the restraint bench with one hand free.




30. Plaintiff was required to clean the MHU while Patterson remained only partially restrained. Plaintiff had no authority to refuse his assigned work duties or determine where those duties would be performed.

31. Plaintiff had no verbal interaction with Patterson and did nothing to provoke or threaten him.

32. Surveillance video shows Patterson retrieving a pair of socks from beneath his leg at approximately 8:56 p.m., wrapping the socks around his right free hand, and repeatedly “target glancing” Plaintiff while Plaintiff performed his cleaning duties. Jail investigators concluded these actions were indicators that Patterson was preparing to physically assault Plaintiff.




33. As Plaintiff walked past Patterson at approximately 8:57 p.m., while performing the duties assigned to him by correctional staff, Patterson suddenly stood up from the restraint bench and launched an unprovoked attack on Plaintiff:

**<u>Angle 1:</u>**



**Angle 2:**




34. Patterson repeatedly struck Plaintiff in the head and face with his fist. Simultaneously, he used the exposed metal ratchet portion of the open handcuff attached to his left wrist as a weapon.

35. Patterson stuck Plaintiff at least nineteen times with his fists and the exposed mental handcuff before correctional officers intervened.

36. Plaintiff fell to the floor during the attack, where Patterson continued striking him repeatedly about the head and face.




37. Plaintiff screamed for help while Patterson continued the assault.

38. Plaintiff sustained multiple lacerations to his scalp and right eyebrow requiring sutures, a fractured right orbital bone, and blurred vision in his right eye. Plaintiff was transported by ambulance to Aurora Sinai Medical Center for emergency treatment.

39. Plaintiff did not consent to the assault.

40. At no time was Patterson actually secured to the wooden bench as he ate.

41. As reported by Sgt. Daniel Carroll, Badge #34, during the investigation of the assault, the original “cuff intended to be secured around the right hand was not closed, and “ratchet teeth” were exposed:

| **Milwaukee County Sheriff's Office** | | | **Supplemental Report** | |
|---|---|---|---|---|
| Incident Report Number: 25-046816 | Incident Location: 949 N 9th St, Milwaukee, WI, 53233 | | | Incident Date: 03/15/2025 |
| New Incident: | | Original Offense - 1: 940.20(1) | New Offense - 1: | New Offense - 2: |

**NARRATIVE**

On Saturday, March 15, 2025, I, Correctional sergeant Daniel Carroll Badge# 34, was assigned to work in full duty uniform on second shift (1330-2130 hours) for the Milwaukee County Sheriff's Office (MCSO) at the Criminal Justice Facility (CJF), located at 949 N. 9th Street, in the City and County of Milwaukee, State of Wisconsin, when the following incident occurred:

On the above date at approximately 2055 hours, I responded to an incident (inmate on inmate battery/assault) in the mental health unit. When I arrived on scene, I observed inmate Donte Patterson (M/B, DOB [redacted]1992, BKG 25-002630) seated in a chair in front of the officer's workstation. Patterson was laughing hysterically, boasting about "beating" one of the inmate workers who was there to clean in the housing unit. Officer Melishia Morgan stated that she had assisted in securing Patterson in handcuffs. I could see that he was wearing a full pair of handcuffs that were secured. Patterson had another pair of handcuffs that were only secured to his left hand. I removed the handcuffs that were not around both wrists. The cuff intended to be secured around the right hand was not closed, and the "ratchet teeth" were exposed. I removed the blood covered handcuffs and secured them until they could be placed in evidence. Because staff was still in the process of assisting with the victim, I assisted in monitoring Patterson until he was evaluated by medical staff. Once he was medically cleared, I helped secure him to the bench near the officers' workstation. I took the handcuffs that Patterson was wearing around his left wrist during the attack and secured them in evidence locker 2, in the operations office.

| Reporting Officer(s): Carroll, Sergeant Daniel J. | | Payroll Number: DCDJC | Report Date: 03/16/2025 |
|---|---|---|---|
| Reviewed by: Payne, Lieutenant Jacquis | Payroll Number: JPXJP | Copy To: | Page: 1 Of 1 |

42. Patterson was not charged with the assault of Plaintiff, as he subsequently was transferred to federal custody to address a host of criminal charges against him

**Milwaukee County Case Number 2024CF004053 State of Wisconsin vs. Donte V Patterson**

**Case summary**

| Filing date | Case type | Case status | |
|---|---|---|---|
| 08-26-2024 | Criminal | Closed - Electronic filing | |
| **Defendant date of birth** | **Address** | **Branch ID** | **DA case number** |
| 11-25-1992 | 8742 South Harper Avenue #B, Chicago, IL 60619 | 30 | 2024ML021225 |

**Charges** :

| | | | |
|---|---|---|---|
| 04-01-2025 | Dismissed | Richards-30, Jonathan | Roque, Fatima |

**Additional text:**

Defendant Donte V Patterson not in court, in custody. Attorney Haley E Wentz in court for Donte V Patterson. Attorney Michael R Staskunas in court for State of Wisconsin. Case called on the record at request of the State. For reasons stated on the record, State moves to dismiss this case. On motion of the State, Court ordered case dismissed without prejudice.

| Milwaukee County Sheriff's Office | | | Supplemental Report |
|---|---|---|---|
| Incident Report Number: 25-046816 | Incident Location: 949 N 9th St, Milwaukee, WI, 53233 | | Incident Date: 03/15/2025 |
| New Incident: FH-Battery by Prisoners | Original Offense - 1: 940.20(1) | New Offense - 1: 940.20(1) | New Offense - 2: 940.19(2) |

**NARRATIVE**

On Friday, March 28th, 2025, I met with Milwaukee County Assistant District Attorney (ADA) Michael Staskunas who reviewed the case file. The DA case file# is 2025ML005508.

AdA Staskunas is No Processing the case file. ADA Staskunas stated Patterson is going to be turned over to the Federal Bureau of Investigation (FBI) and the United States Marshals Service (USMS) as it relates to Patterson's federal charges.

This case file is Closed.

| Reporting Officer(s): Kohl, Gary | | Payroll Number: GAKGK | Report Date: 03/26/2025 |
|---|---|---|---|
| Reviewed by: Anagnostopoulos, Captain | Payroll Number: GTAGA | Copy To: | Page: 1 Of 3 |

## CLAIMS

### COUNT I – 42 U.S.C. § 1983 - FAILURE TO PROTECT
### (Against all Defendants except Ball)

43. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

44. At all times relevant to this action, Plaintiff was a pretrial detainee entitled to protection under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

45. Defendants acted under color of the laws, customs, policies, and usages of the State of Wisconsin and Milwaukee County.

46. Defendants knew, or objectively should have known, that Patterson posed a substantial and obvious risk of serious physical harm to other inmates and correctional staff.

47. Prior to March 15, 2025, Defendants knew Patterson had engaged in repeated violent and assaultive conduct while incarcerated, including a physical assault upon correctional officers only days before the attack on Plaintiff.

48. Defendants further knew Patterson was housed in the Mental Health Unit because of his mental health status and remained physically restrained because he presented a continuing safety threat.

49. Despite their knowledge of Patterson's violent history and dangerous propensities, Defendants removed one of Patterson's restraints and permitted Plaintiff to perform inmate work assignments within Patterson's immediate reach.

50. Defendants failed to adequately supervise or watch Patterson.

51. Defendants failed to maintain adequate separation between Plaintiff and Patterson.

52. Defendants failed to follow reasonable correctional safety practices designed to protect inmate workers from violent inmates by failing to secure Patterson.

53. Defendants failed to intervene before Patterson assaulted Plaintiff despite having sufficient opportunity to prevent the attack.

54. Defendants' acts and omissions were objectively unreasonable under the circumstances and demonstrated deliberate indifference to the substantial and obvious risk of serious harm facing Plaintiff.

55. As a direct and proximate result of the Defendants' unconstitutional conduct, Plaintiff suffered severe bodily injuries, permanent impairment, pain and suffering, emotional distress, medical expenses, loss of enjoyment of life, and other damages recoverable under law.

**COUNT II – 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE IN VIOLATION OF BOTH THE FOURTH AND THE FOURTEENTH AMENDMENT (Against all Defendants except Ball)**

56. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

57. Defendants were aware that Patterson was a violent inmate that created a substantial risk of harm and death to Plaintiff, which subjective knowledge may be imputed from the obviousness of the risk.

58. Defendants acted under color of law in failing to reasonably supervise and protect Plaintiff, were deliberately indifferent to his safety and wellbeing. The right to due process of law and equal protection, as guaranteed by the Fourteenth Amendment to the U.S. Constitution, said rights are substantive guarantees under the Fourteenth Amendment to the U.S. Constitution.

59. As a direct result of Defendants' deliberate indifference to the classification of inmates, acknowledgement of a fight among inmates, Patterson's prior attacks and assault of guards and breaking free of his restraints, as well as the safety, welfare, and health of inmates housed in the Jail, Plaintiff would not have suffered the pain and suffering that he did.

60. Defendants' policies, practices, acts, and omissions constituted deliberate indifference to the serious health and safety of Plaintiff and violated clearly established and well-settled federal constitutional rights of Plaintiff because each and every Defendant, individually and jointly, was deliberately indifference to the constitutionally protected rights of Plaintiff.

61. That Defendants' policies, practices, procedures, acts, and omissions placed Plaintiff at an unreasonable, continuing, and foreseeable risk of being beaten or assaulted, which was a substantial cause of his injuries.

62. Defendants' acts and omissions described in this Count constitute a course of conduct and failure to act amounting to willful, wanton, and deliberate indifference to the rights, health, safety, and welfare of Plaintiff resulting in the deprivation of his constitutional rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

63. The defendants' actions in placing Plaintiff in proximity to Patterson were "objectively unreasonable" under the totality of the circumstances. *Estate of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017) and *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2011).

64. Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT III – NEGLIGENCE**
**(Against all Defendants)**

65. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

66. Defendants owed Plaintiff a duty to exercise ordinary care to maintain reasonably safe conditions within the Milwaukee County Jail and to protect Plaintiff from foreseeable and unreasonable risks of harm.

67. Defendants owed Plaintiff a duty to exercise ordinary care in the supervision, restraint, classification, monitoring, housing, and control of dangerous inmates.

68. Defendants breached their duties of ordinary care by, among other things, by failing to adequately supervise Patterson, failing to adequately supervise Plaintiff, allowing Plaintiff to work within striking distance of Paterson despite Patterson's known violent history, removing one of Patterson's restraints despite the foreseeable risk of assault, failing to maintain appropriate security procedures within the Mental Health Unit, failing to properly classify, monitor, restrain, and control Patterson, failing to implement and enforce reasonable policies governing inmate worker safety, failing to properly train and supervise correctional staff regarding the management of violent in mates, and otherwise failing to exercise ordinary care under the circumstances.

69. The risk that Patterson would violently assault another person was foreseeable and known, or should have been known, to Defendants.

70. Defendants' negligence was a substantial factor in causing Plaintiff's injuries and damages.

71. As a direct and proximate result of Defendants' negligence, Plaintiff sustained severe physical injuries, permanent impairment, pain and suffering, emotional distress, disability, medical expenses, lost earning capacity, and other damages in an amount to be determined at trial.

**COUNT IV – FAILURE TO TRAIN AND SUPERVISE**
**(Against County and Ball – pursuant to Wisconsin Law)**

72. Plaintiff realleges and incorporates by reference, the allegations of the preceding paragraphs as if fully stated herein.

73. Defendants Milwaukee County and Ball were negligent and derelict in their duties and responsibilities.

74. These Defendants actions and inactions resulted in an injury to Plaintiff, and caused him pain and suffering, among other things.

75. At all material times to this Complaint, Defendants had a duty to hire and supervise properly trained personnel to provide adequate and appropriate care to inmates at the Jail and to prevent the harm and even potential death of inmates such as Plaintiff.

76. This failure applies equally to the control pod area of the Jail which, by all accounts, fails to properly monitor and secure Patterson when Plaintiff was attacked.

77. This failure also includes the failure to enforce the policies and procedures of the Jail, and a failure to train to properly apply restraints, especially as to known dangerous inmates, such as Patterson.

78. But for the failure of Defendants to properly supervise, training, and hire their agents, contractors and employees under state law, Plaintiff would not have suffered his injuries and great conscious pain and suffering, and other forms of damages.

79. As a direct and proximate result of the negligence of the Defendants, Plaintiff suffered, among other things, conscious pain and suffering, great physical and emotional pain and suffering, medical expenses, among other damages, in an amount to be proven at trial.

**COUNT VI – VIOLATION OF WIS. STAT. § 101.11 (Safe Place Claim)**
**(Against Milwaukee County)**

80. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

81. Milwaukee County is considered to be an "employer" as that term is defined in Wis. Stat. § 101.11.

82. Milwaukee County is considered to be an "owner" as that term is defined in Wis. Stat. §101.11.

83. The Jail is considered a "place of employment" and a "public building" as those terms are defined in Wis. Stat. § 101.11.

84. Plaintiff is considered a "frequenter" as that term is defined in Wis. Stat. §101.11.

85. By failing to keep up the premises, including the fixtures, such as the wooden bench where Patterson purportedly was secured, and failing to have an appropriate area to have Patterson away from other prisoners while he ate, Defendants have violated the Wisconsin Safe-Place Statue, Wis. Stat. § 101.11.

86. As a result of the Defendants' violation of the Wisconsin Safe-Place Statue, Plaintiff has suffered damages in an amount to be determined at trial.

**RELIEF REQUESTED**

Plaintiff respectfully requests that this court enter judgment for him against each defendant and award the following relief:

a. An order awarding damages for physical discomfort;

b. An order awarding damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life in an amount to be determined by a jury;

c. An order awarding punitive damages in an amount to be determined by a jury;

d. An order awarding taxable costs and disbursements;

e. An order awarding attorney fees and expert fees; and

f. An order awarding such other and further relief as deemed necessary and appropriate by the court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all facts and damages herein.

Dated this 20th day of September, 2026.

**CADE LAW GROUP, LLC**
Attorneys for Plaintiff

By: *Electronically signed by Nathaniel Cade, Jr.*
Nathaniel Cade, Jr. SBN 1028115
Annalisa Pusick SBN: 1116379
PO Box 170887
Milwaukee, WI 53217
P: (414) 255-3802
F: (414) 255-3804
E: nate@cade-law.com
annalisa@cade-law.com